This is a will contest case. The Board of Trustees of the University of Alabama (hereinafter "Trustees"), the proponents of the will, appeal from an order of the Probate Court of Jefferson County holding that Myrtle Crouch Bourziel had revoked her 1983 will and 1985 codicil by removing the signature page from the instrument and thus died intestate. We affirm.
The evidence shows that Mrs. Bourziel was an astute and strong-willed lady until she suffered a stroke when she was over 90 years old. She was an officer in the Birmingham chapter of the Society of Corrosive Engineers, and was in the business of selling coke breeze, a substance used to slow down the process of corrosion of underground pipes.
Mrs. Bourziel executed wills in 1973, 1978, and 1983, with a codicil added in 1985. Each of these wills provided for the establishment of a scholarship fund, which was to be the primary beneficiary of her estate. This scholarship fund was designed to encourage the study of corrosion as it affects metallurgical engineering. The recipients were to be students in the upper half of their class at the University of Alabama, the University of Alabama at Birmingham, or Auburn University.
The will executed by Mrs. Bourziel, and witnessed by Jane Self and George Summers, on August 11, 1983, expressly revoked all prior wills and codicils. In January 1985, Mrs. Bourziel executed a first codicil to her will of August 11, 1983.
During the late summer of 1985, Mrs. Bourziel suffered a stroke and entered into an irreversible coma, resulting in her death on November 25, 1985. On September 24, 1985, during the period in which Mrs. Bourziel was comatose, Mr. John C. Calhoun, who had prepared the 1983 will and who is a party herein as the administrator of Mrs. Bourziel's estate, together with Mr. Sam Elliott entered Mrs. Bourziel's safe deposit box in search of her 1983 will. They found the will intact, except for the last page of *Page 897 
the will, which had contained the signature of Mrs. Bourziel and the signatures of the witnesses to her signature. The last page of the will had been removed from the document and was not in the safe deposit box. Also, the January 1985 codicil was not found with the remainder of the 1983 will. The remainder of the 1983 will was intact and unmarked, with the exception of page 5 of the will, where a line had been drawn through the provisions of Article 6.
Mr. Calhoun and Mr. Elliott then searched the residence of Mrs. Bourziel, but did not find the missing page of the will or the codicil among her belongings.
The issue before us is whether the Probate Court of Jefferson County erred in denying admission of the 1983 will to probate on the ground that Mrs. Bourziel had effectively revoked the will by removing the signature page. Additionally, the Trustees contend that the doctrine of lost wills is applicable and that they have rehabilitated the 1983 will.
In Alabama, any person over the age of 18 who is of sound mind may make a will, Ala. Code (1975), § 43-8-130, and the statutory requirements for the execution of a will are minimal. The will must be: 1) in writing; 2) signed by the testator or in the testator's name by some other person in the testator's presence and by his directions; 3) signed by at least two other persons, each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will. Ala. Code (1975), § 43-8-131.
It is undisputed that on August 11, 1983, Mrs. Bourziel executed an effective will which properly revoked all prior wills and codicils, according to the provisions of §43-8-136(a).
Since the statute provides the only methods by which a will can be revoked, the 1983 will remained in effect and should have been admitted to probate unless it was effectively revoked by strict adherence to the requirements of §43-8-136. Anderson v. Griggs, 402 So.2d 904 (Ala. 1981). Therefore, the issue for our resolution is whether the physical act of removing and discarding the signature page from the body of the will, accompanied by the requisite statutory intent, complies with the statutory requirements of revocation sufficiently to revoke the remainder of the document. Section 43-8-136(b) sets out the actions that can cause the revocation of a will:
 "A will is revoked by being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his consent and direction. If the physical act is by someone other than the testator, consent and direction of the testator must be proved by at least two witnesses."
This statute clearly contemplates two essential elements in order to effectuate a revocation of a will. There must be 1) performance of one or more of the specified acts to a degree that materially and permanently destroys the efficacy of the document, and 2) the testator must intend for the act to revoke the will. One without the other is insufficient to effectively revoke a will.
The first step of this process is to determine whether the removal of the signature page is an act sufficient to revoke a will. Our prior cases, e.g., Anderson v. Griggs,402 So.2d 904 (Ala. 1981); Barksdale v. Pendergrass,294 Ala. 526, 319 So.2d 267 (1975); Woodruff v.Hundley, 127 Ala. 640, 29 So. 98 (1900); Law v.Law, 83 Ala. 432, 3 So. 752 (1887), primarily address the issue of what constitutes a "material mutilation," and these cases are cited by both parties as authority supporting their arguments. The issue in this case is whether the act of removing the signature page revoked the will.
As previously stated, the statutory requirements to execute a will are minimal. However, one of the essential elements is the signature of the testator, or a substitute as provided for by statute, § 43-8-131. Without the signature of the testator, the document fails to satisfy the statutory requirements and there can be no will.
Although we find no Alabama case directly on point, the Appellee's excellent *Page 898 
brief, filed on behalf of the guardian ad litem for the unknown and unascertained heirs of Myrtle Crouch Bourziel, provides us with citations to several compelling decisions from other jurisdictions.
In the case of Evans's Appeal, 58 Pa. 238 (1868), the court was called upon to determine whether a will had been revoked where the signature of the testator had been erased from the end of the document. The court affirmed a finding that the testator intended to repeal his will:
 "Were there nothing more than the erasure of the last signature to the writing dated May 24, 1856, it would be difficult to escape from the conviction that it was an act of repeal annulling all that preceded that signature."
The rationale for such a conclusion was stated therein as follows:
 "It is not uncommon for a testator to sign his name repeatedly to a testamentary paper. He sometimes signs each sheet, sometimes at the close of every disposition, and again at the end. It is the last which consummates the instrument, and makes it a will, and the erasure of the last works as a repeal of the whole instrument."
The Court of Appeals of Kentucky confronted a similar situation in Sanders' Administrator v. Babbit,106 Ky. 646, 51 S.W. 163 (1899), where the court stated:
 "The signature is certainly an essential part of the will. Without it there can be no will, and if it was the purpose of the deceased to revoke his will, no more effectual means of doing so could have been resorted to, short of the total destruction of the paper."
The Supreme Court of Illinois has stated that the removal of the signature from a will is an effective method of revoking. The court stated, in the case of In re Bakhaus'Estate, 410 Ill. 578, 102 N.E.2d 818 (1951):
 "The signature is the most important part of the will and if one not familiar with the statute were to revoke a will, the cutting of the signature from the will would be an ordinary mode to adopt, since the cutting of signatures from documents is frequently used to indicate their cancellation" 410 Ill. at 585, 102 N.E.2d at 822.
In the case of Sanderson v. Norcross,242 Mass. 43, 136 N.E. 170 (1922), the Supreme Judicial Court of Massachusetts ruled upon the validity of a will submitted to probate which had been found in the testator's safe with the signature scratched out and with lines drawn through the names of the witnesses and through two bequeathing paragraphs in the body of the instrument. The court stated: "The scratching out of the signature of the deceased and the drawing of the lines through those of the witnesses constitute a cancellation."
The act of the testator in cutting out, erasing, or otherwise obliterating his signature on the instrument, or the removal of the signature page, is sufficient to revoke the entire will, when performed with such intent. Gay v.Gay, 60 Iowa 415, 14 N.W. 238 (1882); Succession ofMuh, 35 La. Ann. 394 (1883); Re Hopkins' Will,172 N.Y. 360, 65 N.E. 173 (1902); Cutler v. Cutler,130 N.C. 1, 40 S.E. 689 (1902). Such an act strikes at the existence of the whole instrument. Succession ofMuh, 35 La. Ann. 394 (1883).
Having found that the removal of the signature page is sufficient under Ala. Code (1975), § 43-8-136(b), to revoke the entire will, we must next determine whether the evidence supported the conclusion that Mrs. Bourziel intended by this act to revoke the entire will.
The fact that the signature page of the will was detached and missing created a rebuttable presumption of animorevocandi. This Court stated in Barksdale v.Pendergrass, 294 Ala. 526, 319 So.2d 267 (1975):
 "When the will is shown to have been in the possession of the testator, and is not found at his death, the presumption arises that he destroyed it for the purpose of revocation, but the presumption may be rebutted; and the burden of rebutting is on the proponent." *Page 899 
Citing Lovell v. Lovell, 270 Ala. 720, 121 So.2d 901
(1960); Jaques v. Horton, 76 Ala. 238 (1884).
In the present case, the will was in the possession and control of Mrs. Bourziel; therefore, under the law expressed above, it is presumed that the missing signature page was removed and destroyed with the intention of revoking the will. Since the signing by the testator and the witnesses goes to the very heart of the existence of the instrument and is that portion of the instrument that gives life and effect to the instrument as a will, it is presumed that the removal of the signature page revoked the entire will.
The remaining issue to be resolved regarding the revocation of the will is whether the Trustees produced sufficient evidence to rebut the presumption of revocation. The Trustees argue that the intent to die testate and to leave the bulk of her estate to the universities is manifested by the fact that Mrs. Bourziel had executed previous wills that contained similar bequests. We agree with the Trustees that the provisions of the various wills indicate that at one time Mrs. Bourziel intended to establish a substantial scholarship fund; however, the 1983 will, standing alone, would support this contention. Even if this was Mrs. Bourziel's intention from the time she executed the will in 1973 until after she executed the codicil in January 1985, this does not indicate Mrs. Bourziel's intent at the time the signature page was removed, and it is insufficient to overcome the presumption that at the time the signature page was removed Mrs. Bourziel intended to revoke her entire will.
We conclude that the Trustees failed to rebut the presumption of revocation and that Mrs. Bourziel effectively revoked her 1983 will.
Barksdale, supra, details the requirements the proponent of the will must satisfy in order to probate a lost or destroyed will. One of the prerequisites of the lost wills doctrine is the nonrevocation of the instrument by the testator. Having determined that the probate court properly found that Mrs. Bourziel revoked her 1983 will, we hold that the lost wills doctrine is precluded by its own definition.
For all of the foregoing reasons, the order of the Probate Court of Jefferson County is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and HOUSTON, JJ., concur.