SELLERS, Justice.
Shellie G. Spencer III ("Shellie III") appeals from an order of the Mobile Probate Court admitting a copy of his father's will to probate. We affirm.
Facts and Procedural History
Shellie G. Spencer, Jr. ("Spencer"), died on March 9, 2016, at the age of 96. Spencer had three adult children who survived him: Clyde Spencer, Shellie III, and Darrell C. Spencer. On April 18, 2016, Darrell ("the proponent") filed a petition to probate a copy of Spencer's will, which favored the proponent. The proponent represented that the original of the will, dated March 23, 2010, could not be found but that it remained effective and had not been destroyed or otherwise revoked by Spencer. On June 20, 2016, Shellie III and Clyde contested the will, arguing that it was the product of undue influence and coercion exerted upon Spencer by the proponent; another issue was whether the original of the will was merely lost and therefore still effective or whether the will had been revoked. The case proceeded to a bench trial.
On July 25, 2017, the probate court entered an order that contained detailed findings of fact and conclusions of law. Specifically, the probate court found no undue influence or coercion on the part of the proponent. The probate court also noted that, in Alabama, when a will remains in the possession of the testator and is not found at the testator's death, the legal presumption is that the testator revoked the will. In this case, however, the probate court determined that, although the original of Spencer's will had not been found, the totality of the evidence presented by the proponent was substantive enough to rebut the presumption that Spencer had revoked it. Accordingly, the probate court admitted the copy of Spencer's will to probate. Shellie III appealed.
Standard of Review
Because the probate court conducted a bench trial in this case at which oral testimony was given, the ore tenus standard of review applies: " 'When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.' " Smith v. Muchia, 854 So.2d 85, 92 (Ala. 2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996) ).
" 'The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.' Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to 'disputed issues of fact,' whether the dispute is based entirely upon oral testimony or upon a combination of oral *328 testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala. 1995). The ore tenus standard of review, succinctly stated, is as follows:
" '[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.' "
Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala. 2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala. 1977) ).
Discussion
At the outset, we note that the evidence was undisputed that in 2006 W. Gregory Hughes, an attorney, prepared a will for Spencer; that in December 2010, following the death of one of Spencer's children, Hughes prepared a new will (hereinafter "the 2010 will") for Spencer; and that in 2014, approximately two years before Spencer's death, Spencer again met with Hughes, but Hughes undertook no work for Spencer because he could not discern what Spencer wanted Hughes to do and Spencer was "profoundly hard of hearing."
On appeal, Shellie III challenges only that portion of the probate court's order finding that Spencer had not revoked the 2010 will. In Barksdale v. Pendergrass, 294 Ala. 526, 529, 319 So.2d 267, 269-70 (1975), this Court stated the elements necessary to support the probate of a lost will:
"In a proceeding to probate an alleged lost or destroyed will, the burden is on the proponent to establish, to the reasonable satisfaction of the judge or jury trying the facts:
"(1) The existence of a will-an instrument in writing, signed by the testator or some person in his presence, and by his direction, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator.
"(2) The loss or destruction of the instrument.
"(3) The nonrevocation of the instrument by the testator.
"(4) The contents of the will in substance and effect."
(Citations omitted; emphasis added.) Concerning the "nonrevocation of the instrument by the testator," this Court explained:
"When the will is shown to have been in the possession of the testator, and is not found at his death, the presumption arises that he destroyed it for the purpose of revocation; but the presumption may be rebutted, and the burden of rebutting it is on the proponent."
294 Ala. at 530, 319 So.2d at 271.
Shellie III asserts that a reasonable presumption in this case would be that Spencer visited Hughes's office in 2014 for the purpose of executing a new will, having already destroyed or revoked the 2010 will. Accordingly, Shellie III argues that the proponent failed to produce "substantial evidence" to rebut the presumption that Spencer had revoked the 2010 will. However, as this Court stated in Barksdale, to rebut the presumption, the proponent need only establish to the satisfaction of the trier of fact that the will was not revoked. The probate court noted in its order that the evidence was undisputed that Spencer was "a strong-willed person"; that he "made a point of 'taking care of his business' "; that he kept all of his important papers in a specific drawer in a chest of drawers in his bedroom; and that he kept his bedroom door locked when he was *329 away from his residence. Additionally, the proponent testified that he had Spencer's power of attorney; that, before the execution of the 2010 will, Spencer and Shellie III had had a disagreement; that, after executing the 2010 will, Spencer discussed the will with the proponent; that Spencer had given the proponent a copy of the 2010 will; that the proponent did not share the contents of the 2010 will with his siblings; and that Spencer kept the original 2010 will, which was in a white envelope in Spencer's chest of drawers, along with a life-insurance policy. The proponent further testified that he was in and out of Spencer's house almost daily; that in 2016 Spencer was hospitalized; and that the proponent was the one who called the paramedics to have Spencer transported to the hospital. The proponent stated that, before the paramedics arrived, Spencer locked his bedroom door and gave the proponent the key to the bedroom. Dirk Spencer, Spencer's grandson and the proponent's son, testified that, while Spencer was in the hospital, Shelley III asked for the key to Spencer's bedroom because Shellie III wanted to paint the bedroom before Spencer came home from the hospital. Dirk testified that the proponent gave him the key to Spencer's bedroom and that he, in turn, gave the key to Shellie III. Spencer never returned to his house. Following Spencer's discharge from the hospital and a rehabilitation center in 2016, the proponent took Spencer to the proponent's house, where Spencer died. The proponent testified that, after Spencer died, he went to Spencer's house to retrieve the 2010 will, but he was denied access to the house because Shellie III had obtained a restraining order against him. The proponent testified that, because the restraining order would not let him enter the house, he sent Dirk to Spencer's house to look for Spencer's will and that he explained to Dirk where to look and what to look for. Neither the will nor the life-insurance policy was found. Shellie III briefly testified. He admitted that he had filed criminal charges against the proponent resulting in the restraining order and that the proponent was found not guilty of those charges. Shellie III denied that he and Spencer had had a disagreement before Spencer executed the 2010 will. Shellie III also testified that the proponent rarely came to Spencer's house, i.e., that the proponent came to Spencer's house maybe two or three times a month.
As indicated, the probate court concluded that, based on the totality of the evidence, the proponent had produced sufficient evidence to rebut the presumption that Spencer had revoked the 2010 will. We agree; we note that, among other things, the probate court could have reasonably inferred from the testimony presented that Spencer had not revoked the 2010 will because Spencer also had a life-insurance policy that he kept in the same chest of drawers, and that policy also was not found. For the foregoing reasons, we conclude that the evidence presented by the proponent supports the probate court's conclusion that Spencer did not revoke the 2010 will.
Shellie III, relying on a portion of the probate court's order emphasized in an excerpt quoted below, also argues that the probate court committed reversible error by placing the burden of proof on Shellie III to show that the 2010 will had been revoked. In support of this argument, Shellie III cites Lovell v. Lovell, 270 Ala. 720, 121 So.2d 901 (1960), a case in which the trial court incorrectly charged the jury that the burden was on the contestant to show the circumstances to prove that the will had been revoked. The contestants had objected to the trial court's oral charge, arguing that the instruction improperly placed the burden on the contestants *330 to prove that the will had been revoked rather than on the proponent to prove that it had not. This Court agreed, holding that the failure of the trial court to rectify the incorrect statement of law when called to its attention constituted reversible error. In this case, however, there was no jury; the probate court was the sole trier of fact, and the court specifically stated in its order that it had considered the totality of the evidence presented by the proponent:
"In Alabama, when a last will and testament remains in the possession of a testator and is not found at his death, the legal, evidential presumption is that the testator destroyed it, animo revocandi, until the contrary is shown. See Allen v. Scruggs, 190 Ala. 654, 674[, 67 So. 301, 308] (1914). This presumption is rebuttable. The Court is of the opinion and therefore concludes that the totality of the evidence presented by the Proponent is substantive enough in nature to rebut the presumption of revocation animo revocandi. The Court further notes that [Shellie III] offered no evidence in support of the application of this evidentiary presumption."
(Emphasis added.) In other words, the proponent met his burden of rebutting the presumption that the 2010 will had been revoked and establishing to the reasonable satisfaction of the probate court that the 2010 will had not been revoked. The probate court's notation in its order concerning Shellie III's failure to offer any evidence "in support of the application of [that] evidentiary presumption" does not amount to reversible error.
Conclusion
After reviewing the record under the ore tenus standard of review and applying the prevailing substantive legal principles, we conclude that the judgment of the probate court is supported by the evidence. We therefore affirm the judgment.
AFFIRMED.
Stuart, C.J., and Bolin, Shaw, and Wise, JJ., concur.